IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IFC CREDIT CORPORATION, assignee of NorVergence, Inc., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 04 C 5905 |
| UNITED BUSINESS & INDUSTRIAL FEDERAL CREDIT UNION, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

IFC Credit Corporation (IFC), an assignee of NorVergence, Inc., has sued United Business & Industrial Federal Credit Union (UBI) for breach of contract and detinue. IFC has moved for summary judgment. For the reasons stated below, the Court denies the motion.

**Facts**

UBI is a federally chartered credit union based in Connecticut. In 2003, UBI entered into negotiations with NorVergence to obtain telecommunications equipment and services. According to Michael Knurek, UBI's chief information officer, NorVergence agreed to provide UBI with Internet access, telephone service, and cellular phones at a savings of $12,000 per year. On December 12, 2003, Knurek signed five contracts in which UBI agreed to a sixty month lease for five "Matrix boxes," special equipment which, according to NorVergence, enabled it to supply telecommunications services at a lower cost. Def. LR 56.1 Stmt. ¶¶ 1-4.

All five leases contain identical waiver of defense clauses:

> YOU MAY NOT SELL, PLEDGE, TRANSFER, ASSIGN OR SUBRENT THE EQUIPMENT OR THIS RENTAL. We may sell, assign or transfer all of any part of this Rental and/or Equipment without notifying you. The new owner will have the same rights that we have, but not our obligations. You agree you will not assert against the new owner any claims, defenses, or set-offs that you may have against us.

First Am. Compl., Exs. 1-5.

On January 9, 2004, a vendor installed the Matrix boxes at UBI. Despite the fact that the boxes did not work, the vendor asked Knurek to sign the delivery and acceptance certificates for the equipment. When Knurek refused to sign the certificates, the vendor called NorVergence's installation coordinator, who told Knurek that signing the certificates simply showed that the equipment had installed. He further stated that if Knurek did not sign the certificates, the vendor would have to remove the equipment, which would delay the process and jeopardize the low price that NorVergence had guaranteed. After the NorVergence representative assured Knurek that the service would begin within sixty days, Knurek signed the certificates, which stated:

> The undersigned certifies that it has received and accepted all the Equipment described in the Equipment Rental Agreement between NorVergence, Inc. (Rentor) and the undersigned United Business & Industrial Federal Credit Union (Renter) dated 12/12/03. The Equipment conforms with our requirements. **There are no side agreements or cancellation clauses given outside the Equipment Rental Agreement.**
>
> I have reviewed and I understand all of the terms and conditions of the Equipment Rental Agreement. **I AGREE THAT THE RENTAL PAYMENT UNDER THE EQUIPMENT RENTAL AGREEMENT WILL BEGIN 60 DAYS FROM THE DATE OF THIS DELIVERY AND ACCEPTANCE CERTIFICATE AND SHALL CONTINUE THEREAFTER FOR THE FULL LENGTH OF THE STATED INITIAL TERM OF THE EQUIPMENT RENTAL AGREEMENT AND IN ACCORDANCE WITH ITS TERMS AND CONDITIONS.** I was not induced to sign this by any assurances of the Rentor or anyone else. I have had a reasonable opportunity to inspect the goods.

Def. LR 56.1 Stmt. ¶¶ 9-12; First Am. Compl., Ex. 6 (emphasis in original).

On January 12, 2004, NorVergence assigned the leases to IFC, an equipment leasing company that leases equipment and purchases already existing leases. Beginning in March 2004, Robert Wohfiel of IFC began calling Knurek regarding the rental payments for the Matrix boxes. Knurek told Wohfiel that the equipment was defective and then called Novergence, which agreed to pay UBI's bills. On June 30, 2004, however, NorVergence was forced into involuntary bankruptcy and stopped paying UBI's rental payments to IFC. Wohfiel again contacted Knurek and asked that UBI make its lease payments but UBI refused, stating that the equipment still did not work. Def. LR 56.1 Stmt. ¶¶ 14, 16-18, 21. IFC claims that UBI owes $113,098.20 under the leases.

**Discussion**

A party is entitled to summary judgment when there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must view the facts in favor of the non-moving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

IFC claims that under the leases, UBI has an unconditional obligation to pay rent to IFC and cannot raise any defenses or claims it has against NorVergence. UBI responds that IFC cannot enforce the leases because there is no valid contract between IFC and UBI and because even if there is a contract, IFC is not a holder in due course and therefore cannot invoke the waiver of defenses clauses in the leases.

Initially, we reject UBI's argument that there is no contract between IFC and UBI or between IFC and NorVergence. In support of its argument, UBI cites a Sangamon County

3

Circuit Court case in which the Illinois Attorney General sued NorVergence under the state's Consumer Fraud and Deceptive Practices Act. On May 5, 2005, the court entered judgment against NorVergence, finding void any contracts between NorVergence and Illinois consumers or between assignees of NorVergence and Illinois consumers. *People v. NorVergence, Inc.*, No. 2004-CH-655, slip op. ¶ 16 (Ill. Cir. Ct. Nov. 11, 2005). UBI claims that any contract between IFC and UBI or IFC and NorVergence is void as a result of this judgment. Because IFC was neither a party to that suit nor in privity with NorVergence, applying the state court's ruling against IFC in the instant case would be an affront to elementary principles of federal due process. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n. 7 (1979); *Hansberry v. Lee*, 311 U.S. 32, 40 (1940).

Next, UBI contends that even if the leases are valid, IFC cannot invoke the waiver of defenses clause because it is not a holder in due course. In Illinois, a debtor can agree not to assert against the assignee any defenses or claims it has against the assignor. Such an agreement is only valid, however, if the assignee is a holder in course who has taken the assignment for value, in good faith, without notice of a property right in the assignment, and without notice of any real defenses. 810 ILCS 5/9-403(b).

In *Walter E. Heller & Co., Inc. v. Convalescent Home of the First Church of Deliverance*, 49 Ill. App. 3d 213, 365 N.E.2d 1285 (1977), the Illinois Appellate Court considered the dismissal of an action for breach of contract brought by the assignee of a computer lease. The lease agreement was similar to the instant contract in two ways: it included a so-called "hell or high water clause" under which the debtor agreed to pay the rent in any contingency and a waiver of defense clause under which the debtor agreed waive any defenses or claims against the

4

assignee. *Id.* at 215-18, 365 N.E.2d 1285, 1286-88.

While the court held that both hell or high water clauses and waiver of defense clauses are generally enforceable in Illinois, it nonetheless reversed the trial court's dismissal of the action. The court found that there was a factual issue regarding whether the assignee was a holder in due course who could invoke the waiver of defense clause. Finding that there was a question as to whether the assignee obtained the lease in good faith, the court stated that:

> the test of good faith is a subjective standard . . . . Consequently, the defense of lack of good faith by plaintiff presents a factual issue which cannot be resolved purely as an issue of law because of the importance of the effective date of the lease, the date of assignment of the lease, and any other evidentiary matters relevant to the plaintiff's honesty in fact in this particular transaction.

*Id.* at 221-22, 365 N.E.2d at 1291.

In the instant case, there likewise remains a question of material fact as to whether IFC obtained UBI's leases from NorVergence in good faith. Specifically, there is a question as to whether an IFC representative called UBI before taking on the UBI leases and to inquire about whether UBI had accepted the equipment. *See* Knurek Dep. at 43-44, 50, 64-65; Knurek Aff. ¶¶ 21-23. IFC contends that Knurek's statements fail to raise a question of material fact. According to IFC, Knurek, during his deposition, claimed that an IFC representative called him in March 2004 to determine whether he had accepted the equipment. He told her that though he had signed the delivery and acceptance certificates, he had not accepted the equipment because it was not fully installed and was not working. In a later affidavit, Knurek stated that the IFC representative called him in January 2004, before January 12, the date of the assignment of the lease to IFC. According to IFC, this was a self-serving change in testimony that is insufficient to raise a genuine issue of material fact. *See id.*; *Stinnett v. Iron Works Gym/Executive Health Spa,*

5

*Inc.*, 301 F.3d 610, 615 (7th Cir. 2002).

The problem, however, is that IFC takes Knurek's deposition testimony out of context. IFC's attorney asked Knurek whether anyone from IFC called to confirm that he had signed leases with NorVergence. Knurek stated that he recalled a woman from IFC calling him to confirm whether UBI had accepted the equipment from NorVergence. According to Knurek, "I told her that I thought it was a piece of garbage and that it didn't work, and I wasn't satisfied, and I didn't accept it, and until such time as it did work I didn't want to say that I agreed to it or accepted it." When asked when this occurred, Knurek stated that it was "[s]hortly after I talked to the gentleman from NorVergence, who assured me that signing that document was just standard course. Shortly thereafter she called." Knurek Dep. at 43-44. In other words, Knurek said the conversation took place shortly after his January conversation with the NorVergence representative.

IFC is correct that at three points in the deposition, IFC's attorney asked Knurek whether the woman from IFC called in March, and Knurek responded that it could have been in March. *Id.* at 44, 50-51, 64. In none of these instances, however, did Knurek definitively commit that the conversation took place in March. Instead, the only definitive time reference Knurek gave for the conversation with the woman from IFC was that it happened "shortly after" he spoke to a gentleman from NorVergence who told him that signing the delivery and acceptance certificates was standard. *Id.* at 41-42. The parties do not dispute that Knurek's conversation with Norvergence's installation coordinator occurred on January 9, 2004, three days before NorVergence assigned the UBI leases to IFC.

Because Knurek did not definitively state at his deposition that his conversation with IFC

took place in March 2004, but rather left open the possibility of an earlier date, the Court cannot say that his affidavit placing the conversation before January 12 is the type of post-deposition disavowal that a court may ignore in determining whether a genuine issue of fact exists. Though a fact finder might well reject Knurek's somewhat belated flash of recollection, the issue is properly one that can be resolved only at trial.

In sum, because the evidence would permit a finding that IFC took the assignment with notice of a defense, the Court cannot conclude as a matter of law that IFC is a holder in due course. The resolution of this issue turns on the relative credibility of the witnesses in the case, making summary judgment improper. *See, e.g., Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) ("At summary judgment a court may not assess the credibility of witnesses.")

### Conclusion

For the reasons stated above, the Court denies IFC's motion for summary judgment [docket no. 29].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 31, 2006